IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| VERONICA ANN COIA | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | NO. 16-3579 |
| VANGUARD, *et al* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **February 23, 2017**

Unfortunately, a difficult personal relationship between a new supervisor and a long-tenured disabled employee may lead to ending the employment and can, with facts and properly drawn inferences, be traced to a hostile work environment, latent discrimination or retaliatory motive.  We are particularly concerned when the employer cannot show a history of reported performance deficiencies.  But to establish a federal claim warranting a jury's consideration, the employee must adduce disputed material facts and not just her distaste for a supervisor's leadership style.  Years of employer reviews raising performance concerns capped by admittedly emotionally unstable responses support an employer's decision, based on violations of an employer's policies, to end the employment relationship.  Today, after reviewing the former employee's years of laments about her supervisor and her catalogue of those laments under several federal statutory employee protections, we still cannot find a kernel of a disputed fact evidencing the employer's decision is pretext for discrimination, retaliation or hostile work environment.  In the accompanying Order, we grant the employer's motion for summary judgment and dismiss the former employee's claims for age and disability discrimination, hostile work environment based on age and disability, and retaliation claims under the Age Discrimination in Employment Act of 1967,[1] the Americans with Disabilities Act of 1990,[2] the Family and Medical Leave Act,[3] and the Pennsylvania Human Relations Act ("PHRA").[4]

## I. Facts in the light most favorable to Ms. Coia.[5]

On October 6, 2003, Vanguard hired Veronica Ann Coia with responsibilities including typesetting and proofreading fund reports and occasionally working on graphic design. Seven years into her employment, Ms. Coia began reporting to Sallie Sharer. Ms. Sharer reported to her supervisor—Laura Chambers—from March 2013 up until Ms. Coia's termination on November 18, 2015. Ms. Coia's issues focus on Ms. Sharer.

### 1. Ms. Coia's severe depression and borderline personality disorder.

In 2011, Ms. Coia told her supervisor and a Vanguard human resources representative she suffers from depression. Ms. Coia elected short term disability for "very severe depression."[6] In 2013, a doctor diagnosed Ms. Coia with borderline personality disorder. If her condition is left untreated, Ms. Coia described feeling as though "you're either with me or against me."[7]

Vanguard never denied Ms. Coia short-term disability, FMLA leave, or intermittent FMLA leave when she requested it. Vanguard never denied Ms. Coia's requests to leave work early for a doctor's appointment.

### 2. Ms. Coia's performance issues beginning in 2011.

Ms. Coia received various performance reviews, including Midyear Updates and Year End Reviews. The Year End Reviews use a five-level ratings system: "Distinguished," "Fully Successful," "Further Development Needed," and "Does Not Meet Expectations."[8]

On several occasions, Vanguard marked the category "demonstrates resilience and composure" as a development area for Ms. Coia.[9] Vanguard criticized Ms. Coia on numerous occasions for losing emotional control. For example, in Ms. Coia's 2011 Midyear Update, Ms. Sharer noted Ms. Coia "becomes frustrated very easily and is vocal about her frustrations in open settings such as huddles and meetings."[10] Ms. Sharer received "feedback from several of her

2

teammates that Veronica has been rude and disrespectful towards a teammate at two huddles which I was absent."[11]   Ms. Sharer also observed "Veronica tends to panic when she does not understand something and voices her frustration until someone on the team helps her by doing the work for her. She then is relieved and happy but has damaged relationships with her teammates during the process."[12]

Ms. Sharer noted similar issues in 2012. In Ms. Coia's 2012 Midyear Update, Ms. Sharer indicated Ms. Coia "struggled with retaining her composure at times at the start of the year," and "becomes frustrated with the fund report automation process at times."[13] The Update resulted in a discussion between Ms. Coia and Ms. Sharer about "relationships and how they take time to build and can easily be negatively impacted."[14]

In Ms. Coia's 2012 Year End Appraisal, Ms. Sharer noted Ms. Coia struggled to maintain her composure and remain resilient, and she had been disruptive to others, which made it hard for them to concentrate and be productive.[15] In the Appraisal, Ms. Coia wrote:

> As hard as it may be to hear, I'm so appreciative to be given a heads up when I do need to hear feedback; otherwise I'd be unaware of how I affect others. I'm having less of these moments, and, after the last conversation pertaining to this development area of mine, I am *finally* turning a corner. I've gone through extensive psychiatric, psychological, cognitive behavioral therapies, done a lot of research, and am finding bibliotherapy to be the most effective and affordable at this time, as I am changing how I react to unexpected situations, and how I perceive things, and how I think.[16]

**3.     In 2013, Vanguard issues negative reviews about Ms. Coia's performance, absences, and ability to exhibit emotional control.**

On March 20, 2013, Vanguard issued Ms. Coia a Verbal Warning. Ms. Sharer told Ms. Coia her absence and frequent need to leave early affected her performance.

3

From April 16 until May 3, 2013, Ms. Coia took short-term disability leave.  Shortly after she returned from leave,  Ms. Sharer provided Vanguard's 2013 Midyear Update finding Ms. Coia had been "struggling with producing a positive personal impact on others"; her "absence and frequent need to leave early is affecting her performance and is not producing a positive impact on the rest of the team"; she "struggles with demonstrating the ability to exhibit emotional control and maintaining focus despite changes or challenges in the work environment"; and she "easily loses her composure when anything different or unexpected happens."[17]  Ms. Sharer also noted while Ms. Coia had improved her timeliness to huddles and meetings, she still had been late for those meetings.

In her comments to the 2013 Midyear Update, Ms. Coia remarked, "The first quarter was rough, and there are differing perceptions of what happened; however I'm taking responsibility for how I handle things going forward."[18]  Ms. Coia committed to attending cognitive behavioral therapy twice a month, which would teach her how to perceive things less defensively, relearn how to trust, and how to better handle her emotions.[19]

In August 2013, Vanguard issued a Written Alert for deficient performance remaining in effect for 60 days.  In the Alert, Ms. Sharer wrote Ms. Coia had not been exhibiting the ability to control her emotions and maintain focus despite changes or challenges in her work environment. In October 2013, Ms. Sharer extended the Written Alert until December 2013 again citing performance issues and Ms. Coia's inability to maintain emotional control.  The Written Alert instructed Ms. Coia to meet with her management team regularly to review and discuss the progress being made to close the performance gaps.

In Ms. Coia's 2013 Year End Appraisal, Ms. Sharer rated Ms. Coia as "Further Development Needed" and noted gaps in Ms. Coia's performance, including "inaccuracies in her

4

fund reports, not building or fostering relationships with her peers, not demonstrating the ability to exhibit emotional control, not always being willing to think and act independently, and not arriving to work on time."[20]  Ms. Coia responded she had lost "a little bit of [her] emotional control" because "people [were] lying to [her] and trying to ruin [her] life . . . ."[21]

### 4.    Vanguard issues positive reviews in 2014.

In 2014, Ms. Coia improved at controlling her emotions, which she attributed to Ms. Sharer "being a lot nicer" to her and "not nitpicking or targeting" her.[22]  In her 2014 Year End Appraisal, Ms. Sharer rated Ms. Coia as "Fully Successful."[23]  In response, Ms. Coia wrote, "I've made great progress this year; . . . I've greatly improved existing relationships and have created new ones.  I changed how I perceive many things, and changed how others perceive me . . . ."[24]

### 5.    In early 2015, Vanguard issues a Verbal Warning and Written Alert.

In January 2015, Ms. Sharer gave Ms. Coia a Verbal Warning.  Ms. Sharer had been receiving negative feedback from Coia's peers about her inability to do her job.

On February 24, 2015, Ms. Sharer issued Ms. Coia a Written Alert for Deficient Performance, which noted gaps in Ms. Coia's performance:

> Veronica struggles with the ever changing landscape with fund report automation.  She often needs the help of her peers to overcome some of the obstacles.  Veronica sometimes does not think the process through clearly or refer to the job aids.  At times, she is not following job aids, not following processes, and has a lack of attention to detail, which is having an effect on her performance and is impacting the team.  Less tenured crew are coaching and helping her on an ongoing basis.  With our work changing and volumes increasing, there needs to be confidence in Veronica's ability to cover the work.[25]

Ms. Sharer also criticized Ms. Coia for not attending a meeting.  Ms. Coia admits she missed the meeting because at the time, she was speaking with her plumber.

### 6.    Ms. Coia complains about discrimination.

The day after the Written Alert, Ms. Coia emailed Human Resources representative Lisa Smith about her medical conditions, stating she recently switched doctors and medications and claiming  she felt discriminated against because of her "mental health issues."[26]  As a result, Ms. Coia and Ms. Smith discussed Ms. Coia getting a physician's note if Ms. Coia felt she needed any accommodations for her depression and anxiety.

Around the same time period, Ms. Coia requested a lateral transfer.  In response, Ms. Chambers and Ms. Smith met with Ms. Coia and asked her what they could to do support her. Ms. Coia stated she needs a fresh start because Ms. Sharer is the worst boss.  Ms. Smith explained to Ms. Coia her graphic specialist role is so niche it is hard for Vanguard to move Ms. Coia to other areas, and even if Vanguard could do so, Ms. Coia was not performing to the standard of her current role.

On March 5, 2015, Ms. Smith told Ms. Coia she could not substantiate any discrimination based on the information Ms. Coia provided but Vanguard would still consider her request for a transfer.  On March 10, 2015, Ms. Smith wrote Ms. Chambers and Andy Clarke had stated Ms. Sharer is the only manager who supports the type of work Ms. Coia does and they could not identify another Level D position which would fit Ms. Coia's skillset.

On March 12, 2015, Ms. Chambers and Ms. Smith met with Ms. Coia to discuss her future with Vanguard.  Ms. Coia became upset and said Vanguard discriminated against her.  Ms. Coia also said she was trying to get in touch with her therapist and told Ms. Chambers and Ms. Smith, "Who knows.  I might even kill myself."[27]  Ms. Coia left the office for the day on approved paid time off, after which Ms. Smith called Ms. Coia on her cell phone.  During the call, Ms. Coia said she did not dispute her errors but disagreed with the way Ms. Sharer wrote

6

her up. Ms. Smith and Ms. Coia discussed the importance of Ms. Coia's health, and Ms. Smith mentioned Ms. Coia's reference to harming herself concerned her. Ms. Smith eventually added a Carebridge counselor on the line and hung up.[28]

### 7.   Ms. Coia files her first charge with the Equal Employment Opportunity Commission.

On March 2, 2015, Ms. Coia filed her first of three EEOC charges, alleging Vanguard harassed and discriminated based on her age and disabilities. According to Ms. Coia, the discrimination included denying her training, having projects taken from her, Ms. Sharer being disrespectful and annoyed when speaking to Ms. Coia, an inaccurate written alert, and being denied opportunities for advancement.

In early April 2015, Ms. Coia told Ms. Smith, upon returning from leave, she did not feel like she was progressing, she was not having a good year, she cannot trust anyone, and she does not have a good relationship with her bosses. Ms. Coia also said she had lost her passion for her work, lost her trust in the company, and could not trust anyone.

Ms. Sharer did not see any improvement in Ms. Coia's work. As a result, she extended Ms. Coia's written alert for two weeks.

Ms. Sharer, Ms. Coia, and Ms. Smith met on April 16, 2015 and Ms. Coia told Ms. Sharer she felt like a broken spirit and wanted the same opportunities to work on more creative projects like everyone else who reported to Ms. Sharer.

### 8.   The parties sign a settlement agreement.

On April 22, 2015, the parties mediated Ms. Coia's harassment and discrimination claim before the EEOC. The mediation resulted in a Mediation Settlement Agreement signed on May 5, 2015. Vanguard agreed to four terms: (1) Vanguard will provide Ms. Coia "Adobe After Effects" one-day training followed up with linda.com at-desk training; (2) a human resources

representative will facilitate all one-on-one meetings between Ms. Coia and Ms. Sharer until December 31, 2015; (3) Ms. Chambers or her successor will meet with Ms. Coia on a monthly basis until the end of 2015, beginning in May 2015; and (4) Ms. Chambers or her successor will be present at Ms. Coia's mid-year and year-end appraisal meetings, and any meetings related to performance alerts or warnings until the end of 2015.     "In exchange for Vanguard entering into the" Mediation Settlement Agreement, Ms. Coia agreed to release all claims she could have brought against Vanguard on or before May 4, 2015.[29]  Vanguard met all of these obligations except the Adobe After Effects training.  Although Vanguard scheduled Adobe After Effects training, it cancelled the training after it terminated Ms. Vanguard's employment in November 2015.

On the day before the settlement agreement, Ms. Coia told Ms. Chambers of her depression and she did not trust herself to not do harm to herself.  Carebridge recommended Ms. Coia go to the hospital.

**9.     Ms. Coia's negative reviews persist in 2015, and she continues to complain about Ms. Sharer.**

On May 27, 2015, Ms. Sharer extended Ms. Coia's February 24, 2015 Written Alert until August 30, 2015.  On June 9, 2015, Ms. Coia called Ms. Smith and described Ms. Sharer as an "evil boss who lies and has a personal agenda"; Ms. Sharer twists things around and lies; Ms. Sharer and Ms. Chambers are liars; not approachable; and treat everyone like they are five year olds.

On June 10, 2015, Ms. Coia received her 2015 Midyear Review, in which Ms. Sharer rated Ms. Coia as "Off Course."[30]  In response, Ms. Coia wrote she did not believe she received a fair rating.

8

On July 13, 2015, Ms. Coia told Ms. Smith about independent contractor Lisa Cooperstein speaking to her in a condescending manner, which had crushed her morale. Ms. Coia also said Ms. Cooperstein interrupted her and made incorrect assumptions which made Ms. Coia look bad:

> I feel I must document this, because THIS is what goes on too often in this group. You ask a simple question, you won't receive an answer, but you then get accused of not knowing your job, and words get seriously twisted taken completely out of context, and sometimes, like in this instance, words you never said are even put into your mouth . . . . As a result, every day, I have to prepare a defense justifying every word I say, and ensuring those words are not shuffled around or otherwise twisted in a way that is used against me. THIS kind of miscommunication has too often been used against me, and I cannot allow that to happen again.[31]

On July 20, 2015, Ms. Smith responded to Ms. Coia's July 13, 2015 email by suggesting she discuss her concerns with Ms. Sharer in their next meeting, during which Ms. Smith offered to be present. Ms. Coia agreed.

On July 20, 2015, Ms. Coia and Ms. Sharer met with Ms. Smith present. Following the meeting, on July 22, 2015, Ms. Coia emailed Ms. Smith accusing Ms. Sharer of: a) lying during the meeting; b) employing Machiavellian tactics; c) trying to twist things around to undermine Ms. Coia so she could hire her friend, Ms. Cooperstein; d) putting Ms. Coia on the defensive to the point of severe anxiety and depression; e) limiting Ms. Coia's finances and pushing her into poverty; and f) nitpicking and targeting Ms. Coia. Ms. Coia also said three other employees working under Ms. Sharer feared for their jobs and, in some instances, cried.

On July 28, 2015, Ms. Coia emailed Ms. Smith complaining about miscommunication and conflicting information among her team, "[a]s I went about resolving the above miscommunications with my team mates, they have stated that they, too, always worry incessantly for their jobs. We are all in a constant state of fear, and for no good reason at all."[32]

9

Ms. Coia asked Ms. Smith to change her work hours and days because she "had begun to experience pain in [her] hip and feet, as well as increased stress."[33]

The same day, Ms. Smith responded by welcoming Ms. Coia to provide a physician's note to explain the reasonable medical accommodations she needs for her limitations. Ms. Coia responded two days later acknowledging she is very sensitive and automatically in defense mode. It is unclear whether Ms. Coia ever obtained a doctors' note regarding this requested accommodation.

On August 4, 2015, before meeting Ms. Coia and Ms. Sharer, Ms. Coia emailed Ms. Smith complaining her computer had been reimaged, making it more difficult to prepare reports in a timely manner. Ms. Smith responded later that day, after the meeting, and offered her impression Ms. Sharer was very understanding during the meeting. Ms. Coia disagreed, stating, "My perception continues to remain that she is more intent on nitpicking than leading."[34]

On August 11, 2015, Ms. Coia emailed Ms. Smith complaining about Ms. Sharer for taking Ms. Cooperstein's side and twisting Ms. Coia's words. Ms. Coia also previewed an upcoming psychiatrist appointment. Ms. Smith responded:

> The goal of feedback is to help you be fully proficient in your role. It appears you have the tools and training materials . . . to perform your job. You have indicated that the more stressed and anxious you are, the more your performance and concentration is impacted. This is something I suggest you review with your physician at your next appointment. It is important that you get the support from your physician in aiding you in how to manage these health concerns.[35]

On August 14, 2017, Ms. Coia complained to Ms. Smith she did not get paid, which Ms. Coia believed constituted retaliation. On August 18, 2015, Ms. Smith emailed Ms. Coia explaining she did not receive her paycheck on time because a Transaction Specialist coded Ms.

10

Coia's leave incorrectly, which occurred when the employee tried to update Ms. Coia's leave information based on new information from Ms. Coia's physician.

**10.   Ms. Sharer extends Ms. Coia's Written Alert and Ms. Coia responds by accusing Ms. Sharer of retaliation, bullying, and creating a hostile work environment, resulting in Vanguard's investigation.**

On August 31, 2015, Ms. Sharer extended Coia's February 24, 2015 Written Alert to run through October 30, 2015. During a meeting between Ms. Sharer, Ms. Coia, and Ms. Smith in which Ms. Sharer informed Ms. Coia about the extension, Ms. Coia "got very upset and angry and yelled at Sharer that Sharer was not a good leader, never treated Coia fairly, and that Coia will never be successful if Sharer does not give her opportunities."[36] Ms. Coia cried during the meeting and accused Ms. Sharer of retaliating against her. After Ms. Sharer left the meeting, Ms. Coia told Ms. Smith two other individuals feel the same way about Ms. Sharer.

On September 2, 2015, Ms. Coia complained to Ms. Smith of workplace bullying, double standards, a hostile work environment, favoritism, unequal treatment, and Ms. Sharer had hired her friends as contractors even though the crew did not have enough work. On September 9, 2015, Ms. Smith responded by requesting Ms. Coia provide examples of workplace bullying and unequal treatment. The same day, Ms. Coia responded with a "defense statement," in which she accused Ms. Sharer of repeating criticisms against Ms. Coia, slander, lying, discriminating against Ms. Coia because of her mental illness (which she defined as Borderline Personality Disorder, Severe Depression, Bipolar Disorder) and favoring those who Ms. Sharer personally hired. In response to Ms. Sharer's criticisms, Ms. Coia wrote, "Oh PLEASE! EXAGGERATE MUCH!?!"[37]

11

On September 16, 2015, Ms. Sharer, Ms. Chambers, Ms. Smith, and Ms. Coia met and Ms. Sharer gave Ms. Coia a Written Alert extension.  Ms. Smith documented the meeting, characterizing Ms. Coia's comments as "very unprofessional."[38]

On September 22, 2015, Ms. Smith began a workplace investigation into Ms. Coia's allegations of Ms. Sharer's workplace bullying.  Two days later, Ms. Smith told Ms. Coia she could not substantiate Ms. Coia's claims of workplace bullying or hostile work environment.

On October 2, 2015, Ms. Coia told Ms. Sharer she would be extending her intermittent FMLA leave from October 2, 2015 until March 1, 2016.  Vanguard approved this request.

In early October 2015, after a two consecutive meetings, Ms. Coia complained to Ms. Chambers about not having the opportunity to work on a PowerPoint presentation.  Ms. Chambers responded Vanguard solicited volunteers but never heard from Ms. Coia.  Ms. Coia stated she must have been out, and told Ms. Chambers she felt very alone.

**11.     Ms. Coia files a second EEOC charge and complains about problems with her paychecks.**

On October 15, 2015, Ms. Coia filed her second EEOC charge, alleging retaliation.  On October 21, 2015, Ms. Coia emailed Ms. Smith complaining about inaccuracies in three of her paychecks.  Ms. Coia requested she be given six extra days of compensation to make up for the fact she had to spend some of her personal time handling the inaccurate and untimely paychecks.  Ms. Smith told Ms. Coia the issues with her paychecks had been fixed and Vanguard could not give her six additional days off.

On October 27, 2015, Ms. Smith, Ms. Sharer, and Ms. Coia met and Ms. Coia shared she had tried to take her own life and her doctor suggested she take short-term disability.  Ms. Sharer offered feedback about concerns related to her arranging coverage for her work and failure to

communicate regarding attending training. Ms. Coia identified actions she could take to close the performance gaps.

### 12. Vanguard issues a Formal Warning due to performance gaps, and Ms. Coia angrily responds.

On November 4, 2015, Ms. Sharer, Ms. Chambers, and Ms. Smith met with Ms. Coia to update her February 24, 2015 Written Alert and inform her she had not closed performance gaps. Vanguard then placed Ms. Coia on Formal Warning. The Formal Warning identified performance gaps in "not following department standards," "Not taking accountability for you compliance work," "Not demonstrating resilience and composure," and "Not following Fund Report job aids processes."[39]

Ms. Coia became very angry and yelled directly at Ms. Sharer and Ms. Chambers. Ms. Coia called Ms. Sharer the worst human being she has ever met, told Ms. Chambers she had lost faith in her, and told them they are responsible for Ms. Coia's attempt to kill herself. On three separate occasions during the meeting, Ms. Smith interrupted Ms. Coia to inform her it is not acceptable to speak to Ms. Sharer and Ms. Chambers that way. Ms. Smith also informed Ms. Coia they were there to discuss the Formal Warning and asked Ms. Coia to stay focused on the warning itself. Despite notice, Ms. Coia continued to yell at Ms. Sharer and Ms. Chambers.

At the end of the meeting, Ms. Coia spoke with Ms. Smith alone and requested short-term disability. They called the appropriate person about short-term disability and received instructions on next steps. Ms. Coia used intermittent FMLA leave for the remainder of the week. On November 9, 2015, Ms. Coia informed Ms. Smith her doctors wanted her to try different medications before taking short-term disability.

13

###### 13.     Ms. Coia requests a modified work schedule.

On November 9, 2015, Ms. Coia emailed Ms. Smith asking for a different work schedule to work longer days and have a compressed workweek, which her doctor recommended. The same day, Ms. Smith requested Ms. Coia get a doctor's note requesting the accommodation. Ms. Coia believed her intermittent FMLA would cover the accommodation.

On November 11, 2015, Ms. Coia emailed Ms. Smith and requested a work schedule where she would work three days from 9:30 am to 7:00 pm (plus lunch) and she would work on the fourth day from 9:30 am to 6:30 pm. Ms. Coia indicated this schedule would allow her to avoid traffic jams, work during quieter hours, help her save gas, and improve her work-life balance. Ms. Smith responded the same day, asking Ms. Coia for a doctor's note, stating a note would be necessary for a compressed schedule for medical/health reasons. Ms. Coia never provided the note.

###### 14.     Ms. Sharer rates Ms. Coia poorly at her Year-End Review, and Ms. Coia writes a response causing her termination for violating Vanguard policies.

On November 12, 2015, Ms. Coia received a written copy of her 2015 Year-End Review. Ms. Sharer rated Ms. Coia as "Did not meet expectations," the lowest of four possible ratings.[40] Among other things, Ms. Sharer wrote, "Since [your written alert extension], I have observed minimal progress in closing the gaps, critical to your role, stated in both the initial and extended Written Alerts. As a result, you were placed on a Formal Warning on November 4, 2014, which will be in effect for 4 weeks."[41]

Ms. Coia responded at great length within hours:

> Sallie, First off, may I suggest that you take a writing course so that perhaps you may be able to add a lot more originality and honesty into this joke of a review (biggest piece of campy fiction I've read in my life; hahahahahahaHaHA!) Seriously! How many times did you copy and paste "struggles with the ever changing

14

landscape of automation" this year? How lazy can you possibly be in addition to spiteful and dishonest? We have to fill out how many calendars for you to keep track of where we are? The huddles: what do I ever miss in those 5 minutes?

Everyone goes around the room, says the same ol' same ol' regarding what projects they're working on, and maybe 3 times a year you actually have something useful to say. 95% of the time, all you have to offer is a fake "ok, everyone, have a great day!" or, you tell us "we are in the green! ("Let them eat cake!") The team just voted to do away with the huddles since they are not at all value added and a total waste of time (feels like roll call in grade school). Half the time, you're not even at them!

Because of the nonstop bullying and targeting in which you have subjected me to, more than a few times I tried to end my life the past few months because you and this toxic environment that you have created have triggered some major, severe depression as well as extreme anxiety which are leading to a host of other stress-related issues; and you really lay it on thick SPECIFICALLY after I tell you of antidepressant medication changes I'm going through with my doctors in order to deal with your nonsense. Ask every doctor I have, including my dentist, about what the toxic enforcement you have created is doing to my health. Ask my family and friends, too!

The sad part? IT IS ALL SO UNNECESSARY!!!!! Before you decided to start your little campaign to drive me insane and get rid of me, I THRIVED during busy periods, because once upon a time, no one was riding me about inconsequential non-issues (and twisted lies). No one can do their best in a toxic environment with a bully for a boss, especially an incompetent, narcissistic one who is only about themselves and not at all about the subordinates. Ever changing landscapes? WE ARE TALKING ABOUT VERY SLIGHT STYLE TWEAKS, WHICH CHANGE UNNCECESSARILY TOO OFTEN. OR DUPLICATED STYLES WITH 2 DIFFERENT NAMES! Pu-leeeaase! Your attempts at dumbing me down, killing trees with your suggestion I print out job aids to show you things I can do IN MY SLEEP is an insult. Also an insult are the non-stop catch-22 situations you place me in, the way you twist my asking a peer A SIMPLE QUESTION, TRYING TO 1. OBTAIN A SIMPLE PIECE OF INFOR, OR MORE ACCURATELY, 2. CONFIRM INFOR TO DO MY JOB (and actually talk to my peers since I'm so isolated), into NOT KNOWING MY JOB? Meanwhile, EVERY TIME you are plotting your next attack against me, all I hear is your grating voice

asking Laura or Mike to help with doing YOUR job, (trust me, I am not stupid, and I can always tell when you're about to throw your next arrow at me by your extreme giddiness and veiled comments to Laura prior to any of what I will now call "Defense Sessions" because it's all it is now; me defending myself against your lies). You are absolutely unapproachable, and quite full of yourself.

EVERY SINGLE TIME since you've been targeting me, ANY type of project on which I've showed passion (in the past, since you continue to shut me down), you've taken away. You are so negative towards me, despite mastering fake cheerfulness in front of others, you INVENT, exaggerate, outright LIE and have completely shut me down on any attempt I have to made [sic] to move forward HERE. You are also extremely clueless and insulting my intelligence. Uh, After Effects in a huge ANIMATION software, I will drop my lessons into your User Drop Box, although you're not going to be able to tell how far I've come, since the lessons thus far all look the same, and if you are unfamiliar with it like I'm sure you are, you won't be able to tell what exactly you're looking at. It also gets really hard to focus because every single meeting, every time I hear your voice, I cringe. I get so disgusted by your lame attempts to destroy my progress that it has affected my entire life. Honey, if you REALLY want to see me lose my composure? Come talk to me during my commute (also held against me) and for an hour after I get home, ESPECIALLY after EVERY MEETING with you. I am the EPITOME of composed by way of comparison.

How can anyone possibly move forward under your direction unless they are one of your "pets"? (Let's be clear here, YOU SHOW MAJOR FAVORITISM!). You nit pick, you micromanage to the point of ridiculousness, and you LIE. You are a liar on so many instances that all I can do now is LAUGH! The truth hurts you, but it sets me free!

A true leader ENCOURAGES her subordinates, not bullies and targets them to the point of outright LIES that no [sic] only lead to bad health, but loss of faith. Congratulations! thanks to your [sic], for the first time since working here, I lost a bit of faith in the company I work for, because, unfortunately, I have a megalomaniac for a boss. You continue to LIE about my telling you my software training plans, you TOTALLY and COMPLETELY set me up AND LIED NONSTOP regarding the MRFP reports that you [sic] BFF helped you to set me up to set me up to fail. (You know, the contractor we really didn't need who

16

has been overtaking all of my projects, and even some I'd never even heard of.)  OR, do you just take any piece of feedback and twist it around so badly that you pit people against each other?  I suspect that is more the case with you.  Fact it [sic], you are not a true leader.

May I suggest (strongly urge) you to read Mr. Bogle's book, "Enough," specifically the chapter regarding "Too much management, not enough leadership"?  Because your leadership style goes against the very core of what Mr. Bogle intended when he founded Vanguard.  Most of the time, you rudely rush others along with an incessant "uh'huh, u-huh, uh-huhmmm-hmmmm" or you just repeat what Laura says in the meetings.  WHAT VALUE DO YOU ADD?

The only silver lining to having you as a boss is that I did finally find the right psychiatrist and therapist, which, yes, I needed for past traumas as well; but they've helped me tremendously to realize how smart, talented and creative I am, a big dose of self-awareness (one of your opportunity areas), and my psychiatrist says: "you have skills-our boss obviously is trying very hard to get rid of you, and you're still there," and most importantly, writing and documentation skills.  In addition, they have helped me to find a better mindset to achieve things at home on my own time.  Meanwhile, you have not one encouraging thing to say EVER about anything from my web page to anything else related to my creativity.

I bet you also think you're being so cute moving my year-end to Friday the 13th, don't you.  WHATEVER.  I am so over you and I have zero respect for you.  Sorry-not-sorry, but I do not respect megalomaniacal liars, I don't care who you are or what your title is- you are just another human on this planet, same as me.  You have a complete inability to relate to anyone whose lifestyle does not mirror yours; you show zero diversity regarding personalities, upbringings, etc.  You may be able to obtain all the degrees in the world, but you'll never acquire heart, soul, or common sense.  I feel sorry for you.[42]

At 10:26 the same evening, <u>after</u> submitting the above response, Ms. Coia told Ms. Smith of filing an EEOC Charge a few weeks beforehand, alleging retaliation.  Ms. Coia also complained about her Year End Review, referring to it as "a hatchet job" and "nothing but outright lies and exaggeration."[43]

The next day, Ms. Sharer told Ms. Smith about Ms. Coia's written comments. After reviewing the comments, Ms. Smith recommended to Ms. Sharer she not meet with Ms. Coia regarding the year-end appraisal. Ms. Smith explained to Ms. Coia she would postpone the meeting due to the content of Ms. Coia's comments and her unprofessionalism. Ms. Smith told Ms. Coia she could go home the rest of the day at full pay.

On November 18, 2015, Vanguard decided to terminate Ms. Coia for violating its Professional Conduct and Fair Treatment Policies, as well as her Formal Warning, due to abusive and unprofessional conduct. Vanguard's Fair Treatment Policy provides, among other things, "You are responsible for ensuring that all of your work relationships are based on mutual trust and respect for human dignity. You should treat all those with whom you work as valued and respected colleagues."[44]

Vanguard's Professional Conduct Policy provides, in pertinent part, employees "are expected to adhere to the highest ethical and professional standards of behavior."[45] The policy provides examples of unprofessional actions and behavior including "treating . . . fellow crew members in a manner that is malicious, obscene, threatening, or intimidating, or that might constitute harassment or bullying."[46]

On November 18, 2015, Vanguard told Ms. Coia they were terminating her employment for violating its policies. Vanguard set December 2, 2015 as Ms. Coia's official last day to allow her to meet with physicians for medical care. However, on November 20, when Ms. Coia tried to fill prescriptions at CVS Pharmacy, CVS allegedly told Ms. Coia her coverage was terminated. Vanguard did not pay Ms. Coia through December 2, 2015.

On February 22, 2016, Ms. Coia filed a Third EEOC Charge. In this charge, Ms. Coia alleged Vanguard fired her in retaliation for filing her Second EEOC Charge.

18

While at Vanguard, Ms. Coia never heard anyone express bias toward another based on his or her age, and no one ever told Ms. Coia they heard a supervisor at Vanguard express bias toward older workers. Ms. Coia admits Ms. Smith, Ms. Sharer, and Ms. Chambers never said anything expressing a bias against people with disabilities. She could not recall anyone at Vanguard saying anything to her suggesting a bias against her for requesting or taking FMLA leave or for requesting an accommodation.

## II.    Analysis

Ms. Coia, acting *pro se*, sued Vanguard for age and disability discrimination, hostile work environment based on age and disability, and retaliation claims under the Age Discrimination in Employment Act of 1967,[47] the Americans with Disabilities Act of 1990,[48] the Family and Medical Leave Act,[49] and the Pennsylvania Human Relations Act ("PHRA").[50] Ms. Coia also sued Sallie Sharer, Laura Chambers, and Lisa Smith under the Pennsylvania Human Relations Act for age and disability discrimination, hostile work environment based on age and disability, and retaliation. Vanguard moves for summary judgment arguing Ms. Coia's claims fail as a matter of law. [51] We agree.

### 1.    Ms. Coia released claims arising on or before May 4, 2015.

Vanguard argues Ms. Coia released all claims which she could have been asserted on or before May 4, 2015 by entering into a Settlement Agreement with Vanguard. Ms. Coia argues Vanguard breached the Settlement Agreement, rendering it null and void.

Under Pennsylvania law, we interpret general releases by the rules of contract construction.[52] According to our Court of Appeals, if the consideration for a release of claims consists of only the promise to perform, which is unfulfilled, the releasing party cannot reinstitute the claims.[53] In such cases, the proper remedy would be a suit sounding in breach of

19

contract, not reinstitution of the breached claims.[54] If, however, the consideration for a release of claims consists of performance of the settlement agreement, "only substantial performance of the obligor's duties under the agreement will extinguish the prior claim."[55]

Whether consideration for a release constitutes performance or the mere promise to perform depends on the intent of the parties as manifested in the language of the settlement agreement.[56]   For example, in *Capek v. Mendelson*, paying the settlement amount—the performance—constituted consideration for the release because the settlement agreement provided "if . . . all of the $330,000 settlement fund is not fully paid within ninety days, any monies paid will be returned, and there will be no settlement . . . ."[57]  Similarly, in *Weinberg v. Thyssenkrup Budd Co.*, an agreement between the parties made settlement contingent upon successful closing of a transaction: "Promptly following the *successful* Closing of the transaction herein contemplated, Seller will terminate the Lawsuits with prejudice."[58]  Also, in *Melendez v. Horizon Cellular Tel. Co.*, the court found "no question" consideration for the plaintiff's release of discrimination claims constituted his employer's performance of the settlement agreement: "[i]n exchange for the satisfactory fulfillment by [Defendant] of the promises contained in paragraph (3) of this Agreement, [Plaintiff] agrees not to institute a lawsuit with respect to the above-referenced charge".[59]  By contrast, in *Dugan v. O'Hara*, the promise to pay the settlement constituted consideration for the release where the settlement agreement provided "consideration of $15,000 in exchange for a general release, including all employment and civil liability claims."[60]

We find Vanguard's promise to perform four obligations constituted consideration for Ms. Coia's release.  In exchange for Ms. Coia's release of claims, Vanguard agreed to four terms: (1) Vanguard will provide Ms. Coia "Adobe After Effects" one-day training to be followed up with

linda.com at-desk training; (2) a human resources representative will facilitate all one-on-one meetings between Ms. Coia and Ms. Sharer until December 31, 2015; (3) Ms. Chambers or her successor will meet with Ms. Coia on a monthly basis until the end of 2015, beginning in May 2015; and (4) Ms. Chambers or her successor will be present at Ms. Coia's mid-year and year-end appraisal meetings, and any meetings related to performance alerts or warnings until the end of 2015. The settlement agreement does not condition release of Ms. Coia's claims on Vanguard's performance of these promises. Although Vanguard did not fulfill its promise to Ms. Coia, Ms. Coia's remedy is filing a lawsuit for breach of the settlement contract in state court, not reinstitution of federal and state discrimination claims.

### 2. We grant summary judgment dismissing Ms. Coia's hostile work environment claims under the ADEA, the ADA, and the PHRA.[61]

Vanguard argues Ms. Coia fails to satisfy the elements of a hostile work environment. To prove hostile work environment based on disability, Ms. Coia must prove (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment; and (5) Vanguard knew or should have known of the harassment and failed to take prompt effective remedial action.[62] To prove hostile work environment based on age, Ms. Coia must prove (1) she suffered intentional discrimination because of her age; (2) she suffered severe or pervasive discrimination; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) the existence of *respondeat* superior liability.[63]

For summary judgment purposes, Vanguard contests the severity or pervasiveness of the discrimination. To determine whether an environment is severe or pervasive, we must consider

21

the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[64] "It is well-settled that being closely supervised or watched does not constitute an adverse employment action that can support a hostile work environment claim, and that having one's work micromanaged may be unpleasant but does not give rise to a hostile environment claim."[65] "[T]he 'conduct must be extreme to amount to a change in the terms and conditions of employment.'"[66] This analysis "must concentrate not on individual incidents, but on the overall scenario."[67]

Ms. Coia failed to cite specific evidence following May 4, 2015 demonstrating she suffered severe or pervasive harassment based on disability or age. Ms. Coia must support factual assertions by "citing to particular parts of materials in the record."[68] *Pro se* litigants are held to this same standard as other litigants.[69] Ms. Coia on occasion cites to evidence, but fails to point us to the evidence demonstrating severe or pervasive harassment occurring after May 4, 2015. Much of the evidence she cites relate to events preceding May 4, 2015. At best, Ms. Coia demonstrates an environment where her supervisor—Ms. Sharer—closely supervised her work performance. Interpreting the facts in the light most favorable to Ms. Coia, Ms. Sharer allegedly did not like her and did not meet her view of leadership. Ms. Sharer offered critical reviews. But we have no evidence of severe or pervasive hostility based on age or disability in the workplace.

In view of the undisputed facts, a reasonable jury could not conclude Ms. Coia suffered severe or pervasive harassment during the applicable time period. We grant summary judgment dismissing Ms. Coia's disability and age-based hostile work environment claims.

**3.      We grant summary judgment dismissing Ms. Coia's claims Vanguard denied her a reasonable accommodation under the ADA or PHRA.**

To establish a *prima facie* case of discrimination under the ADA, Ms. Coia must show she: (1) is disabled; (2) qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) has suffered an otherwise adverse employment decision as a result of discrimination.[70]  Failure to provide a reasonable accommodation can constitute an adverse employment action.[71]  To prove a failure to accommodate claim, Ms. Coia must demonstrate: (1) Vanguard knew of her disability; (2) she requested an accommodation; (3) Vanguard did not make good faith efforts to assist; and (4) Ms. Coia could have been reasonably accommodated but for Vanguard's lack of good faith.[72]

As to the good faith element, at least one court has found an employer's request for medical documentation in support of a requested accommodation is consistent with the good faith requirement.[73]  There, the employer accommodated the employee's earlier accommodation by allowing her to report to an on-call location closer to her home.[74]  Later, the employee requested an accommodation to be removed from the on-call schedule altogether.[75]  In response, the employer requested another doctor's note to determine whether the employee's condition had changed.[76]  The court held "[n]o reasonable fact-finder could conclude based on all the circumstances that Defendants did not make a good faith effort to accommodate Plaintiff's disability. The mere fact that they did not immediately acquiesce to Plaintiff's demand to be removed from on-call duties and instead requested additional medical documentation" does not indicate bad faith.[77]

Ms. Coia argues Vanguard did not accommodate Ms. Coia's disabilities because it did not allow Ms. Coia the same opportunity to work at home when her depression or anxiety flared up. Ms. Coia requested an accommodation to work a four-day workweek.  Consistent with its

23

obligation to respond to an accommodation request in good faith, Ms. Smith requested Ms. Coia

provide a physician's note for Ms. Coia's requested accommodation, but Vanguard fired Ms.

Coia before she could provide a physician's note.  Ms. Coia does not provide evidence Vanguard

failed to make good faith efforts to assist Ms. Coia with her accommodation prior to terminating

her for an unrelated reason.  The undisputed facts demonstrate Vanguard granted all of Ms.

Coia's requests for short-term disability, FMLA, and intermittent FMLA leave, modified her

work schedule to allow her to leave early for doctors' appointments, and offered her counselors.

There is no evidence Ms. Coia obtained a physician's note but Vanguard disregarded the note.

We grant summary judgment as to Ms. Coia's failure to accommodate claim.

### 4. We grant summary judgment dismissing Ms. Coia's age and disability discrimination claims under the ADEA, ADA, and the PHRA.

Vanguard argues Ms. Coia cannot demonstrate a *prima facie* case of age or disability

discrimination.  Vanguard also argues Ms. Coia cannot demonstrate Vanguard's reasons for its

adverse employment actions were pretextual.

Under the familiar *McDonnell Douglas* framework, if Ms. Coia establishes a *prima facie*

case, the burden shifts to Vanguard to proffer evidence of legitimate non-discriminatory

reasons for its adverse employment actions.[78]  "'The defendant satisfies its burden at this step

'by introducing evidence which, taken as true, would permit the conclusion that there was a

nondiscriminatory reason for the unfavorable action.'"[79]  Once satisfied, Ms. Coia must then

show, by a preponderance of the evidence, Vanguard's explanation is "pretextual."[80]  In other

words, Ms. Coia must adduce evidence allowing a factfinder to disbelieve Vanguard's reasons,

or point to evidence allowing a factfinder to believe an invidious discriminatory reason more

likely than not constituted a "motivating or determinative cause" of Vanguard's conduct.[81]

24

Ms. Coia does not cite evidence demonstrating Vanguard's decision to terminate Ms. Coia on the basis of violating Vanguard policies constitutes pretext for age or disability discrimination. Nor does Ms. Coia demonstrate Vanguard's decisions to issue Ms. Coia a Formal Warning or to extend her Written Alerts were merely pretextual. The undisputed facts confirm Ms. Coia failed to demonstrate resilience, composure, and emotional control on a number of occasions by, for example, calling Ms. Sharer the "worst human being" Ms. Coia ever met during a business meeting. Ms. Coia's failure to maintain emotional control and her performance issues were consistently documented in her Mid-Year Updates and Year-End Appraisals.      More importantly, Ms. Coia violated Vanguard's policies requiring professionalism and respect for coworkers through her response to her final Year-End Review. Ms. Coia has not presented competent evidence demonstrating Vanguard's decision to terminate her did not relate to her policies violations.

Because no reasonable jury could find Vanguard's conduct constitute pretext for age or disability discrimination, we grant summary judgment as to Ms. Coia's age and disability discrimination claims.

### 5.      We grant summary judgment dismissing Ms. Coia's retaliation claims under the ADA, the ADEA, the FMLA, and the PHRA.

Vanguard argues Ms. Coia fails to demonstrate a causal connection for the purposes of establishing a *prima facie* case of retaliation. Vanguard also argues Ms. Coia cannot demonstrate pretext.

"A 'pretext' claim of illegal retaliation follows the familiar burden shifting analysis of Title VII claims set forth in *McDonnell Douglas*."[82]  In such cases, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous

25

with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[83]

If Ms. Coia establishes a *prima facie* case, "the burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action."[84] The burden then shifts back to Ms. Coia to prove "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."[85]

In the context of Title VII, our Court of Appeals instructs "an employee may not insulate herself from termination by covering herself with the cloak of Title VII's opposition protections *after* committing non-protected conduct that was the basis for the decision to terminate."[86] In *Curay-Cramer*, a Catholic school teacher engaged in pro-choice advocacy by, among other things, lending her name to a pro-choice newspaper advertisement.[87] The school decided to fire her but gave her an opportunity to resign before doing so.[88] Before the school fired her, she informed the school they could not legally fire her for opposing the school's illegal employment practices.[89] After the teacher refused to recant her support of the advertisement, the school fired her.[90] Our Court of Appeals held, "an employer need not refrain from carrying out a previously reached employment decision because an employee subsequently claims to be engaging in protected activity."[91] If such conduct could prevent an employer from going through on its decision to terminate the employee, "employers would be placed in a judicial straight-jacket not contemplated by Congress."[92]

Ms. Coia appears to argue her negative performance reviews, Written Alert extensions, and termination constitute retaliation. Ms. Coia fails to cite evidence suggesting the underlying reasons for these actions were merely a pretext for retaliation. Ms. Coia has a well-documented

26

history of performance issues and failing to exercise emotional control, resilience, and composure, and Ms. Coia has not demonstrated these reasons are merely a pretext for retaliation.

As to Ms. Coia's termination, Ms. Coia engaged in protected activity within a week of her termination by sending Ms. Smith an email informing Ms. Smith she had filed an EEOC charge. This protected activity, however, occurred *after* Ms. Coia engaged in conduct violating Vanguard's policies and accordingly cannot be used to insulate Ms. Coia from termination.[93]

We grant summary judgment as to Ms. Coia's retaliation claims because no reasonable jury could find Vanguard's actions were merely a pretext for retaliation.

### III.    Conclusion

Ms. Coia fails to adduce evidence necessary to create a genuine issue of material fact as to her claims of age and disability discrimination, hostile work environment based on age and disability, and retaliation under the ADA, the ADEA, and the PHRA. In the accompanying Order, we grant Vanguard's Motion for summary judgment.

---

[1] 29 U.S.C. § 621 *et seq.*

[2] 42 U.S.C. § 12101 *et seq.*

[3] 29 U.S.C. § 2611 *et seq.*

[4] 43 P. S. § 951 *et seq.*

[5] We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" Ms. Coia, "the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Vanguard filed its Statement of Undisputed Material Facts at ECF Doc. No. 23-3. Vanguard filed an appendix at ECF Doc. Nos. 23-4 through 23-7. Ms. Coia responded to Vanguard's Statement of Undisputed Material Facts at ECF Doc. No. 73. Ms. Coia added documents to the Appendix at ECF Doc. Nos. 27 through 61. References to the exhibits in the appendices shall be referred to by bates number, for example, "Appx. 1."

[6] Appx. 301–02.

27

[7] *Id.* at 317–18.

[8] *Id.* at 2.

[9] *Id.* at 363.

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 3.

[14] *Id.*

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 5.

[19] *Id.*

[20] *Id.* at 6, 87.

[21] *Id.* at 382–84.

[22] *Id.* at 404.

[23] *Id.* at 7, 112.

[24] *Id.* at 7.

[25] *Id.* at 8.

[26] *Id.*

[27] *Id.* at 66.

[28] Carebridge is a firm which excels in person-to-person support.

[29] Appx. 458.

[30] *Id.* at 184.

[31] *Id.* at 211.

[32] *Id.* at 175.

[33] *Id.* at 175–76.

[34] *Id.* at 170–71.

[35] *Id.* at 168.

[36] *Id.* at 22.  At the outset of this case, Ms. Coia stipulated this fact is undisputed.  ECF Doc. No. 13.  "Factual stipulations are binding and conclusive . . . , and the facts stated are not subject to subsequent variation." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010) (quoting 83 C.J.S., Stipulations § 93 (2000)) (brackets omitted).  To the extent this or other stipulated facts conflicts with Ms. Coia's evidence, Ms. Coia's stipulated facts control. *See id.*

[37] Appx. 167.

[38] *Id.* at 217.

[39] *Id.* at 258–61.

[40] *Id.* at 29.

[41] *Id.*

[42] *Id.* at 238–240.

[43] *Id.* at 1081.

[44] *Id.* at 33.

[45] *Id.* at 34.

[46] *Id.*

[47] 29 U.S.C. § 621 *et seq.*

[48] 42 U.S.C. § 12101 *et seq.*

[49] 29 U.S.C. § 2611 *et seq.*

[50] 43 P. S. § 951 *et seq.*

[51] Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle*, 435 F.3d at 264 (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[52] *Hull v. Welex Inc.*, No. 02-7735, 2002 WL 31887043, at *3 (E.D. Pa. Dec. 30, 2002) (citing *Bickings v. Bethlehem Lukens Plate*, 82 F.Supp.2d 402, 405 (E.D.Pa. 2000)).

[53] *Polish American Machinery Corporation v. R.D. & D. Corp.*, 760 F.2d 507, 511 (3d Cir. 1985); *see also Dugan v. O'Hara*, 125 F. Supp. 3d 527, 538 (E.D. Pa. 2015); *Capek v. Mendelson*, 821 F. Supp. 351, 359 (E.D. Pa. 1993).

[54] *Dugan*, 125 F. Supp. 3d at 538.

[55] *Polish American Machinery Corporation*, 760 F.2d at 511.

[56] *See Capek*, 821 F. Supp. at 359 (brackets omitted).

[57] *Id.*

[58] *Weinberg v. Thyssenkrup Budd Co.*, No. 05-6213, 2008 WL 834387, at *4 (E.D. Pa. Mar. 27, 2008).

[59] *Melendez v. Horizon Cellular Tel. Co.*, 841 F. Supp. 687, 692 n.8 (E.D. Pa. 1994).

[60] *Dugan*, 125 F. Supp. 3d at 533, 538.

[61] "[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (quoting *Fogleman v. Mercy*

*Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)).  The parties do not point to specific language requiring different treatment.

[62] *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999).

[63] *See Slater v. Susquehanna Cty.*, 465 F. App'x 132, 138 (3d Cir. 2012) (assuming standards for age-based discrimination are the same as the Title VII hostile work environment standards); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (setting for the standard for hostile work environment under Title VII).

[64] *Id.* at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

[65] *Ciecka v. Cooper Health Sys.*, No. 15-4075, 2017 WL 656727, at *10 (D.N.J. Feb. 14, 2017) (quoting *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 423 (D.N.J. 2009)) (brackets omitted).

[66] *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

[67] *Mandel*, 706 F.3d at 168 (quoting *Caver*, 420 F.3d at 262–63).

[68] Fed. R. Civ. P. 56(c); *see also Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (quotation marks omitted).

[69] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating pro se litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants"); *see also Schock v. Baker*, No. 16-1678, 2016 WL 6276048, at *3 (3d Cir. Oct. 27, 2016) (affirming entry of summary judgment against *pro se* plaintiff because plaintiff did not cite to specific parts of the record).

[70] *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

[71] *Id.*

[72] *Taylor*, 184 F.3d at 312.

[73] *Alotto v. ECSM Util. Contractors, Inc.*, No. 09-1144, 2010 WL 5186127, at *3 n.12 (D.N.J. Dec. 15, 2010).

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (citation omitted).

[79] *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

[80] *Id.*

[81] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 645 (3d Cir. 2015) (quoting *Fuentes*, 32 F.3d at 764).

[82] *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[83] *Id.*

[84] *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[85] *Id.* (citing *Marra*, 497 F.3d at 300).

[86] *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 137 (3d Cir. 2006).

[87] *Id.* at 132.

[88] *Id.*

[89] *Id.*

[90] *Id.* at 133.

[91] *Id.* at 137 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

[92] *Id.* at 137.

[93] *Id.*